UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────

KELSEY P.,[1]

    Plaintiff,

v.                                                                19-CV-317 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

───────────────────────────────────

## DECISION AND ORDER

Plaintiff Kelsey P. brings this action under the Social Security Act ("the Act") and seeks review of a determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Dkt. 8. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 13. Plaintiff replied. Dkt. 14.

For the following reasons, this Court denies Plaintiff's motion and grants the Commissioner's cross-motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order entitled "In Re: The Identification of Non-Government Parties in Social Security Opinions," this Decision and Order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

On July 1, 2015, Plaintiff applied for social security income ("SSI") under Title XVI. Dkt. 1-1 at 5. The Commissioner denied that application on September 3, 2015. *Id.* Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on October 19, 2015. *Id.* The ALJ held a hearing on October 25, 2017 and issued a decision on January 3, 2018, finding that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act. Dkt. 1-1 at 5, 14. The Appeals Council denied Plaintiff's request for review on January 10, 2019, making the ALJ's decision the Commissioner's final decision. Dkt 1-2 at 2. Plaintiff brought this action on March 8, 2019. Dkt. 1 at 2.

## LEGAL STANDARD

### I. District Court Review

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (*quoting Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II.    Disability Determination

In denying Plaintiff's application, the ALJ evaluated her claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 416.920(a)(2). At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. *Id.* § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* § 416.920(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* § 416.920(a)(4)(ii). If there are no severe impairments, the

claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. *Id.* § 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.* § 416.920(a)(4)(iii). But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. *Id.* § 416.920(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See id.* § 416.920(a)(4)(iv); *id.* § 416.920(d)-(e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* § 416.945. After determining the claimant's RFC, the ALJ completes step four. *Id.* § 416.920(e). If the claimant can perform past relevant work, she is not disabled and the analysis ends. *Id.* § 416.920(f). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.* § 416.920(a)(4)(iv); *id.* § 416.920(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* §§ 416.920(a)(4)(v), (g); *Bowen v.*

*Yuckert*, 482 U.S. 137, 146 n.5 (1987). More specifically, the Commissioner must prove that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)).

## DISCUSSION

### I. The ALJ Decision

The ALJ analyzed Plaintiff's claim for SSI under the process described above. At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date of June 27, 2015.[2] Tr. 13.[3] At step two, the ALJ found that Plaintiff had a severe impairment, namely low vision due to retinopathy of prematurity. Tr. 13. At step three, the ALJ found that this impairment did not meet or medically equal any impairments listed in the regulations. Tr. 13. At step four, the ALJ determined that Plaintiff has the RFC to "perform a full range of work at all exertional levels" with certain non-exertional limitations. Those limitations include: (1) no hazardous environments; (2) no climbing ladders or stairs "more than occasionally"; and (3) no driving "automotive equipment." Tr. 14. Plaintiff also cannot "read fine print more than occasionally" or work in "dark environments." Tr. 14.

---

[2] Plaintiff had first alleged a disability onset date of June 27, 1997 (her date of birth), but then amended that date at her hearing before the ALJ. This Court proceeds with June 27, 2015 as the operative alleged onset date.

[3] Docket 4 is the transcript of proceedings before the Social Security Administration. All references to Docket 4 are denoted "Tr. __."

Completing step four, the ALJ found that Plaintiff had no past relevant work. Tr. 18. At step five, relying on the testimony of a vocational expert and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed "in significant numbers in the national economy" that Plaintiff could perform. Tr. 19. These jobs included being a dining room attendant, a laundry worker, a dish washer, a housekeeper, and a sales attendant. Tr. 19. Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. Tr. 20.

## II. Analysis

### A. The ALJ did not err in his RFC analysis.

Plaintiff contends that the ALJ erred by not properly considering "limitations in color vision" and claimed difficulties in performing daily living activities in the RFC based on subjective testimony from Plaintiff and her mother. Dkt. 8-1 at 11. Specifically, Plaintiff argues that the ALJ did not properly credit testimony from her and her mother that Plaintiff had difficulty distinguishing colors, and that she struggled with judging how well she completed daily living tasks, such as shaving and sweeping. *Id.* Plaintiff asserts that this failure to fully credit and address this subjective testimony means that the ALJ's decision was not based on substantial evidence and that remand is warranted. *Id.* at 15. Additionally, Plaintiff contends that the ALJ erred by citing her "conservative treatment." *Id.* at 14. This Court disagrees for the following reasons.

While the ALJ must consider a claimant's activities and subjective complaints, he does not need to explicitly "include each subjective complaint

expressed and every observation[] made" in his determination. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *3-4 (N.D.N.Y. Jan. 23, 2013); *see also Barringer v. Comm'r*, 358 F. Supp. 2d 67, 78-79 (N.D.N.Y. 2005) (noting that an ALJ's failure to cite specific evidence does not mean it was not considered); 20 C.F.R. § 416.929(c)(3)(i). An ALJ is not required to "mention[] every item of testimony . . . or . . . explain[] why he considered particular evidence unpersuasive" where "the evidence of record permits [a court] to glean the rationale of an ALJ's decision." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

Such evidence exists here. Plaintiff's claim rests on subjective testimony from her and her mother that she has difficulty distinguishing colors and that she has difficulty performing daily living activities. Dkt. 8-1 at 11. The ALJ's analysis may have omitted these specific complaints, but that does not mean that he did not consider them, and he was not required to address them explicitly. Significantly, Plaintiff's claim that she cannot distinguish colors is based on a single instance that she and her mother had both testified to at the hearing. Tr. 61, 80. Plaintiff had testified that she had difficulty distinguishing between black and dark blue clothing while working a shift at in retail and that a supervisor corrected her. Tr. 61. She then clarified that it was "really just . . . one time . . . ." *Id.* Further, Plaintiff's mother's testimony did not clearly indicate that this was an ongoing problem. *See* Tr. 80.

The medical evidence does not support Plaintiff's claim that she has ongoing problems with color vision. The only other support on the record for Plaintiff's claim

7

is a teacher report that notes that she could not read the dry erase board when the teacher wrote in red marker, and that "writing need[ed] to be larger" for Plaintiff to read it. Tr. 288. Conversely, a school eye examination found that Plaintiff "was able to distinguish between all the colors presented to her." Tr. 303. While this complaint does not feature explicitly in the ALJ's determination, this does not suggest that he did not consider it in light of the conflicting medical evidence and the hearing testimony regarding her limited vision.

Plaintiff also contends that the ALJ did not properly address her complaint that she has difficulty performing daily living activities. First, her function report to the Social Security Administration dated July 29, 2015 asserts that she usually misses spots when shaving her legs and underarms. Tr. 261. Second, she and her mother testified that while Plaintiff can clean up after herself, she does not always see if she has cleaned up fully. Tr. 66, 75. While the ALJ was not explicit in addressing these complaints, he did consider them. The determination notes that "[w]hile the claimant may not be perfect at certain task[s] she is clearly capable of performing many household functions." Tr. 18. The ALJ based this on the totality of the medical evidence and the witnesses' allegations with no single factor being dispositive. *Id.* The ALJ did not err in not explicitly addressing these subjective complaints in his determination.

Plaintiff also contends that the ALJ erred in assigning only slight weight to her mother's testimony. This Court disagrees. A non-medical third party's opinion must be considered under the SSA's regulations, but is not entitled to any

8

particular weight. 20 C.F.R. § 416.927(f). The ALJ should still articulate why a non-medical witness's opinion is given a certain weight. *Id.* § 416.927(f)(2). However, not every factor that an ALJ would consider in weighing the opinion of acceptable medical source is relevant, and such a discussion will depend on the facts of the case. *Id.* § 416.927(f)(1). The adjudicator may consider whether the non-medical witness's opinion conflicts with other evidence in the record, and any special relationship with the claimant that may color the witness's view. *See Rusten v. Comm'r*, 468 F. App'x 717, 719 (9th Cir. 2012).

The ALJ found, and a review of the record supports, that Plaintiff's mother offered only her own lay opinion that conflicted with both her daughter's testimony and with the medical evidence. For instance, Plaintiff testified that she believed that she could work fulltime, while her mother testified that she felt that Plaintiff could not. *Compare* Tr. 57, *with* Tr. 82. Similarly, Plaintiff testified that she gets headaches if she reads for too long, but that she normally does not need to take any over-the-counter medicine to relieve the pain and that taking a short break often resolves her symptoms. Tr. 62-63. Plaintiff's mother contradicts this by characterizing the headaches as far more common and far more severe as Plaintiff herself had stated on the record. *See* Tr. 76-79. These conflicting statements between a lay witness and the claimant herself support the ALJ assigning only slight weight.

This testimony also conflicts with the medical evidence. Plaintiff's claim of headaches appears once in her medical records—where, in a December 2015

9

medical visit, her ophthalmologist Steven Awner, M.D. recommended that Plaintiff remain hydrated and that she should keep a headache diary. Tr. 379. There is no indication that she ever kept such a diary, and Plaintiff did not mention headaches at other medical visits. *See* Tr. 510, 514, 519, 526. The only other evidence comes from Plaintiff's testimony, and that of her mother's third party lay opinion. The severity of these headaches, testified to by Plaintiff's mother, conflicts further with the medical evidence. For all these reasons, the ALJ was not required to give Plaintiff's mother any more than slight weight and did not err in doing so.

Finally, Plaintiff argues that the ALJ erred by discounting her treatment regimen as "conservative." Dkt. 8-1 at 14. *See also* Tr. 16. This argument is unpersuasive. While a recommendation of conservative treatment alone is not substantial evidence that a claimant is not disabled, *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008), the ALJ did not base his determination on this. The ALJ observed that Plaintiff's "treatment has been essentially routine and conservative." Tr. 16. This was not the basis of his determination, but rather a characterization of the treatment history that he then described in greater detail. Even if he considered Plaintiff's conservative treatment regimen, it is not legally improper to do so when "that fact is accompanied by other substantial evidence on the record . . . ." *Burgess*, 537 F.3d at 129. The ALJ discusses substantial evidence beyond Plaintiff's treatment regimen in making his determination. The ALJ's mention of conservative treatment was therefore not itself legal error.

## B. <u>Substantial evidence supports the ALJ's determination.</u>

Having found no legal error in the ALJ's determination, this Court finds that substantial evidence supports the ALJ's determination that Plaintiff is not disabled as defined in the Act. Plaintiff suffers from retinopathy of prematurity; in April 2014, a low vision examination performed by Dr. James Simmons, O.D., indicated that Plaintiff's visual acuity in April 2014 was 20/100 and 20/125 in the right eye, and 5/200 in the left, both with variable adaptive viewing. Tr. 330. Dr. Simmons recommended that Plaintiff use large print when needed. Tr. 336.

Plaintiff testified at her hearing that, while she was offered such accommodations throughout her schooling, she did not use them unless she "really needed it." Tr. 59. Specifically, she utilized large print on a couple of occasions in middle school and occasionally used a magnifying glass in high school. *Id.* She also had preferential seating at the front of the classroom. Tr. 65. In elementary school she had a visual aide available to help her once a week. Tr. 65-66. Plaintiff also testified that she has a computer from the Commission for the Blind that allows her to zoom in, but that she only uses it sometimes. Tr. 64, 69.

Her ophthalmologist Dr. Awner had previously indicated that she was not a candidate for a driver's license. Tr. 340. An August 2015 consultative examination with Theodore Prawak, M.D. indicated that Plaintiff is legally blind and that she "cannot drive a motor vehicle, operate machinery, or climb heights." Tr. 361. However, Plaintiff reported that she performed daily living activities such as cleaning, cooking, shopping, and reading. Tr. 360. Based on this examination, Dr.

11

Prawak opined that she could not drive a motor vehicle, operate machinery, or climb heights, but that her condition did not preclude her from reading. Tr. 361.

At her hearing, Plaintiff testified that she was a junior in college studying for degrees in veterinary technology and biology and that she maintained a part-time job in retail. Tr. 50-52. At work, she required extra time to read the buttons on the cash register and had some difficulty reading portions of the printed receipt. Tr. 60. Plaintiff also held a summer internship at a veterinary office where she cleaned, observed appointments, and counted and bottled pills. Tr. 52. She has also worked for a cat rescue program for three summers and was not limited by her low vision. Tr. 68. Plaintiff testified that she believed that she is "able to work" if it was not at a computer or required her to "do microscope stuff for too long." Tr. 57.

At home, Plaintiff performs household chores and her daily living activities, however imperfectly. *See* Tr. 55-71. While she has a hard time reading buttons on the oven, she can cook, including slicing vegetables. Tr. 71. She can read her schoolwork without glasses, but she uses them if she reads on the computer. Tr. 62. She testified that reading for too long can cause her to have a headache, for which she ordinarily would take a break, taking Ibuprofen "sometimes." Tr. 62-63. Plaintiff takes no other medication. Tr. 56.

All these factors reasonably informed the ALJ's RFC and the non-exertional limitations noted in his opinion and are substantial evidence to support his determination. The evidence above would support a reasonable mind in concluding that Plaintiff is not disabled and can perform fulltime work, with certain limitations

based on the medical evidence and the hearing testimony. The ALJ's RFC specifically limited her from working in hazardous environments, from climbing heights more than occasionally, from reading fine print more occasionally, and from working in dark environments. All of this accounts for her limited vision from her retinopathy and the medical evidence on the record. The ALJ therefore did not err in determining that Plaintiff is not disabled because substantial evidence exists on the record to support that determination.

## CONCLUSION

For all the foregoing reasons, this Court GRANTS the Commissioner's motion for judgment on the pleadings and DENIES Plaintiff's motion for judgment on the pleadings. The Commissioner's final decision is AFFIRMED. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:    November 24, 2020
          Buffalo, New York

                                                                   s/John L. Sinatra, Jr.
                                                                   JOHN L. SINATRA, JR.
                                                                   UNITED STATES DISTRICT JUDGE